**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

|  |  |
|---|---|
| WHITNEY ADAMS, individually, as legal guardian for minors C.R. and C.R., and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant. | Case No.<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Whitney Adams, individually, and as legal guardian for minors C.R. and C.R., ("Plaintiff") by and through undersigned counsel, brings this action against State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant") on behalf of Plaintiff and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## PRELIMINARY STATEMENT

1.    Plaintiff brings this action as a result of Defendant's wide-spread subrogation of Personal Injury Protection ("PIP") and MedPay policies in direct violation of South Carolina Code of Laws § 38-77-144.

2.    Defendant's subrogation practices deprive Plaintiff and other members of the Class from their required payable PIP and MedPay policy benefits.

3.    Defendant's refusal to correct its unlawful PIP and MedPay coverage subrogation is in bad faith and at the expense of Plaintiff and other members of the Class.

4.      This action seeks damages in the amount Plaintiff and other members of the Class are owed, together with other damages pled herein.

## PARTIES

5.      Plaintiff Whitney Adams and her minor children, C.R., and C.R., both 6 years of age, are residents and citizens of Dillon, Dillon County, South Carolina.

6.      Defendant State Farm Mutual Automobile Insurance Company is incorporated and organized under the laws of the state of Illinois.

7.      Defendant State Farm Mutual Automobile Insurance Company has its principal place of business at One State Farm Plaza, Bloomington, IL 61701.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on one hand, and Defendant, on the other, are citizens of different states.

9.      This Court has personal jurisdiction over Defendant because it conducts business in South Carolina and has sufficient minimum contacts with South Carolina.

10.     Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendant sells and distributes their insurance policies throughout the United States and within this District.

## FACTUAL ALLEGATIONS

11.     In South Carolina, MedPay policies are optional, additional policies which are funds that are directly paid to the insured, regardless of fault, for payment of medical expenses and act as a guaranteed safety net in the event of a car accident.

12.     Under South Carolina law it is required that MedPay policy benefits are paid directly to policyholders.

13.     The required payable policy benefits are well defined in South Carolina, as South Carolina Code § 38-77-144, which states:

> "There is no personal injury protection (PIP) coverage mandated under the automobile insurance laws of this State. Any reference to personal injury protection in Title 38 or 56 or elsewhere is deleted. If an insurer sells no-fault insurance coverage which provides personal injury protection, medical payment coverage, or economic loss coverage, the coverage shall not be assigned or subrogated and is not subject to a setoff."

14.     MedPay is treated like a separate contract from the liability coverage contract. Recovery under the medical payments clause of an automobile liability policy is completely independent of liability on the part of the insured.[1]

15.     MedPay is part of a premium an insured person pays to their automobile insurance company in exchange for the automobile insurance company's promise to pay the insured for reasonable medical expenses incurred by the insured person as the result of an automobile accident.

16.     It is well settled in South Carolina that paying the MedPay benefits directly to the covered insured person is the appropriate practice.  As the South Carolina Supreme Court held in *Hamrick v. State Farm Mut. Auto Ins. Co.*, "[t]hese benefits, commonly referred to as PIIP benefits,

---

[1] § 158:2. Fault of insured or victim irrelevant, 11 Couch on Ins. § Couch on Ins. § 158:2.

are **payable directly to or for the person who purchases the policy** regardless of who was at fault, when the insured suffers bodily injury as a result of an automobile accident."[2]

17.     In South Carolina, MedPay funds received by insured persons are not subject to reimbursement or subrogation.

18.     Defendant offers potential policy holders MedPay policies.

19.     Plaintiff and other Class Members elected to enroll in Defendant's optional MedPay policies.

20.     As a condition of enrollment, Plaintiff and members of the class were required to and did pay all insurance premiums when due to Defendant.

21.     However, when Plaintiff and other Class Members were entitled to medical payments coverage, Defendant sent their MedPay checks directly to medical providers resulting in subrogation in violation of the polices and State law.

22.     Defendant has refused and continues to refuse to pay insured policy holders their benefits per the policy and State law as described above.

23.     Defendant State Farm, through its agents, servants and/or employees sold to Whitney Adams an automobile insurance policy effective February 23, 2023, through August 31, 2023, providing medical payment insurance coverage to Plaintiff.

24.     Whitney Adams had paid all insurance premiums when due to Defendant.

25.     On or about August 18, 2023, Plaintiff was injured as a result of an automobile accident in South Carolina.

26.     As a result of the accident, Plaintiff suffered thousands in medical expenses.

27.     Plaintiff filed a claim for medical payment coverage with the Defendant.

---

[2] *Hamrick v. State Farm Mut. Auto. Ins. Co.*, 270 S.C. 176, 178, 241 S.E.2d 548, 549 (1978).

28.    On or about August 25, 2023, Whitney Adams, through counsel, directed that Defendant issue the medical payment coverage check to Plaintiff before issuing payment for the medical payment coverage check.

29.    Defendant State Farm agreed to medical payment coverage up to $1,000.00 for the Plaintiff for injuries arising out of an automobile accident.

30.    Instead of complying with direction of counsel and applicable State law, Defendant State Farm issued two medical payment coverage checks to ACS Primary Care Physicians, both in the amount of $604.00, and one additional check in the amount of $60.00 to Pee Dee Health Solutions, without consent and/or approval of Plaintiff or counsel.

31.    On or about June 5, 2024, Whitney Adams, through counsel, informed Defendant that instead of issuing the checks to Plaintiff, Defendant had paid two checks in the amount of $604.00 each to ACS Primary Care Physicians and one check in the amount of $60.00 to Pee Dee Health Solutions in violation of S.C. Code § 38-77-144.  In this same correspondence, Plaintiff, through counsel, further directed Defendant to issue the remainder of Plaintiff's medical payment coverage to Plaintiff.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this action as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> **Class:** All persons who purchased MedPay or PIP insurance in South Carolina who were not directly compensated for their claims in accordance with state law.

33.    Excluded from the Class are Defendant(s), and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.

Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

34.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

35.    The action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

36.    The members of the Class are so numerous and geographically dispersed that individual joinder of all members is impracticable.  Whitney Adams, as representative for minor Plaintiff, is informed and believes that there are thousands of members of the Class, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records.  Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

37.    This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class, including without limitation:

  a)   Whether Defendant engaged in the conduct alleged herein;

  b)   Whether Defendant violated state law by paying PIP and MedPay benefits directly to medical providers rather than the insured;;

c) Whether Defendant breached their contracts with Plaintiff and other members of the Class by paying PIP and MedPay benefits directly to medical providers rather than the insured;

d) Whether certification of any or all of the class proposed herein is appropriate under Fed. R. Civ. P. 23;

e) Whether Class Members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

f) The amount and nature to be awarded to Plaintiff and the other members of the Class.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

38.     Plaintiff's claims are typical of the claims of other members of the Class because, among other things, all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

39.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of other members of the Class they seek to represent.  Plaintiff has retained counsel competent and experienced in complex litigation and Plaintiff intend to prosecute the action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and their counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

40.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment by Plaintiff and other

members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

41.     Even if members of the Class could afford individual litigation, the Court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

42.     To the extent any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

43.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

**CAUSES OF ACTION**

**COUNT I**
**BREACH OF CONTRACT**

44.      Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

45.     Plaintiff brings this count on behalf of herself, her minor children, and other members of the Class.

46.     Plaintiff and other members of the Class entered into contracts with Defendant which provided that Plaintiff and other members of the Class would pay premiums and, in exchange, Defendant would pay the insured for reasonable medical expenses incurred by the insured person as the result of an automobile accident.

47.     The contractual terms are set forth in Defendant's insurance policy provisions.

48.     These terms form the basis of the bargain on which prospective policy holders agree to accept Defendant's offer of PIP and/or MedPay coverage in exchange for the payment of premiums.

49.     Based on this mutual assent, Plaintiff and other members of the Class fulfilled their end of the bargain when they paid premiums.

50.     However, Defendant breached the contracts with Plaintiff and other members of the Class by paying medical payments coverage directly to health care providers without reissuing checks directly to Plaintiff and other members of the Class.

51.     Plaintiff and other members of the Class accepted Defendant's offer for optional insurance benefits and paid valuable consideration in exchange.

52.     However, after accepting such consideration from Plaintiff and other members of the Class, Defendant made medical payments coverage payments directly to medical providers resulting in subrogation, which deprived Plaintiff and other members of the Class of the benefit of the bargain for which they had already paid.

53.     Defendant's refusal to reissue checks directly to Plaintiff and other members of the Class is in bad faith.

54.     Plaintiff and members of the Class have suffered damages as a direct and proximate result of Defendant's breach amounting to the amount of PIP and MedPay coverage provided under their policies.

55.     As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include the amount of PIP and MedPay coverage provided under their policies for which they contracted.

## COUNT II
## BAD FAITH

56.      Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

57.     Plaintiff brings this count on behalf of herself, her minor children, and other members of the Class.

58.     At all relevant times, Plaintiff and other members of the Class had an existing mutually binding contract with Defendant to provide PIP and/or MedPay coverage to Plaintiff and other members of the Class in exchange for their payment of premiums.

59.     This reality notwithstanding, Defendant has engaged in payments of PIP and/or MedPay coverage directly to medical providers in violation of State law[3].

60.     Defendant refused and continues to refuse to reissue PIP and/or MedPay coverage to Plaintiff and members of the Class.

61.     Defendant's actions are unreasonable and breaches the requirements of good faith.

---

[3] *See, e.g.*, South Carolina Code § 38-77-144.

62.     Plaintiff and other Class Members have suffered damages as a direct and proximate result of Defendant's unreasonable actions and breach of good faith.

63.     As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include the amount of PIP and MedPay coverage provided under their policies for which they contracted, consequential and punitive damages.

## COUNT III
### FRAUD

64.     Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

65.     Plaintiff brings this count on behalf of herself, her minor children, and other members of the Class.

66.     Defendant, through its agents, servants and employees, engaged in unlawful unfair, deceptive and fraudulent acts and practices in violation of State law by engaging in the activities described herein.

67.     Defendant is an insurance company worth billions of dollars, which, among other things, offer consumers PIP and/or MedPay policies.

68.     Plaintiff and other members of the Class are consumers who have paid substantial consideration for the full benefits of PIP and/or MedPay policies.

69.     Defendant made statements, representations, and omissions with respect to the benefits provided under Defendant's PIP and MedPay policies that Plaintiff and other members of the Class would receive.  Such statements, representations, and omissions, which were uniform and identical in nature, were intended to induce potential consumers to purchase Defendant's PIP and/or MedPay policies.

70.     Defendant knew that these statements were false and made them with the intention that the Plaintiff and Class Members rely on their false statements.

71.     The reasonable expectation was that consumers who purchased Defendant's PIP and/or MedPay policies would receive the full benefits of PIP and/or MedPay policies.

72.     Unfortunately, these statements, representations, and omissions are false, and accordingly, Plaintiff and other members of the Class did not receive the full benefits of their PIP and/or MedPay policies.

73.     Had Plaintiff and the Class known of the false representations Plaintiff and the Class would not have accepted coverage under Defendant's PIP/MedPay policies.

74.     Plaintiff and the Class relied on Defendant's misrepresentation by accepting coverage and paying their requested premiums.

75.     Plaintiff and the Class were justified in relying on this misrepresentation as the true nature of the PIP/ MedPay policies were not known to Plaintiff or the Class and the Defendant promised specific coverage and benefits.

76.     Plaintiff and the Class have suffered damages as a direct and proximate result of this Defendant's fraudulent actions. Plaintiff and the Class have lost out on their benefit of the bargain, lost funds stemming from paid premium amounts, they have endured financial burden, and they have been greatly inconvenienced by Defendant's fraudulent PIP/MedPay policies.

**<u>COUNT IV</u>**
**NEGLIGENT MISREPRESENTATION/OMISSION**

77.      Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

78.     Plaintiff brings this count on behalf of herself, her minor children, and other members of the Class.

79.    Defendant failed to advise Plaintiff and other members of the Class that their PIP and/or MedPay coverage would not be paid directly to them.

80.    Defendant intended that the Plaintiff and the Class rely on their representations.

81.    Defendant's representations were material to Plaintiff's and the Class Members' decision to obtain PIP and/or MedPay coverage from the Defendant. Had Plaintiff or the Class known that these representations were false, Plaintiff would not have obtained PIP and/or MedPay coverage from Defendant.

82.    Defendant has a duty to provide accurate information to consumers regarding their PIP and/or MedPay policies.

83.    Defendant failed to fulfill its duty to accurately disclose in its advertising benefits provided under Defendant's PIP and MedPay policies.

84.    Additionally, Defendant has a duty to not make false representations with respect to benefits provided under PIP and MedPay policies.

85.    Defendant failed to fulfill its duty or use ordinary care when they made false representations regarding benefits provided under Defendant's PIP and MedPay policies, as detailed above.

86.    Such representations regarding benefits provided under Defendant's PIP and MedPay policies amount to negligent misrepresentation.

87.    Plaintiff and the other members of the Class reasonably relied upon such representations and omissions to their detriment.

88.    Due to Defendant's conduct, Plaintiff and the Class were damaged by Defendant in that they have been deprived of their payable PIP/ MedPay policy benefits. As such, Plaintiff and Class Members have had to endure an immense financial burden.

89.     By reason thereof, Plaintiff and the other Class Members seek actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendant's negligent misrepresentation.

## COUNT V
## NEGLIGENCE

90.     Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

91.     Plaintiff brings this count on behalf of herself, her minor children, and other members of the Class.

92.     Defendant, directly or indirectly, caused insurance policies to be purchased, sold, distributed, marketed, promoted, installed, and/or used by Plaintiff and the Proposed Class.

93.     At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, marketing, advertisement, supply, promotion, sale, and distribution of the policies, including the duty to take all reasonable steps necessary to provide insurance policies that complied with all applicable State regulations.

94.     Defendant represented to consumers, including Plaintiff and Class Members, that it would provide insurance policies with PIP/MedPay coverage that complied with all applicable regulations within the required time frame after the signing of the contract.

95.     At all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that it was required to provide Plaintiff and members of the Proposed Class with PIP and/or MedPay coverage in accordance with their policy.

96.     Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that not providing the required PIP or MedPay

disbursement directly to the policyholder could cause Plaintiff's and members of the Class' injuries.

97.     As such, Defendant breached its duty of reasonable care and failed to exercise ordinary care when failing to provide payments directly to policyholders, in that Defendant knew or had reason to know that Plaintiff and members of the Proposed Class would require such payment as per the express terms of the contract.

98.     Despite the ability and means to provide payments directly to Plaintiff and members of the Proposed Class, Defendant failed to do so. Indeed, Defendant wrongfully failed to perform for Plaintiff and members of the Class.

99.     The Defendant's payment of all benefits to non-policyholders deviated from the normal standards of applicable PIP and/or MedPay policies in the following ways:

   a)  In failing and omitting to pay all PIP and/or MedPay benefits directly to policyholders;

   b)  In negligently issuing benefit payments directly to medical providers in direct contradiction to applicable State law;

   c)  In failing to cancel and reissue benefit payments to Plaintiff and members of the proposed class after being notified by counsel of the error; and

   d)  In continuing to fail to remedy improperly issued PIP and/or MedPay benefit payments.

100.     As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer actual monetary damages in addition to the noneconomic injuries already suffered.

101.    Plaintiff's and Class Members' injuries were foreseeable as Defendant had received complaints from Plaintiff and Class Members regarding the failure to provide benefits payments to policyholders as instructed by State law.

102.    Plaintiff and the Class Members seek actual damages, injunctive and declaratory relief, attorney's fees, costs, and any other just and proper relief available.

## COUNT VI
## BREACH OF FIDICUIARY DUTY

103.    Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

104.    Plaintiff brings this count on behalf of herself, her minor children, and other members of the Class.

105.    Defendant created a fiduciary relationship when they accepted payments of insurance premiums from Plaintiff and other members of the Class in exchange for the benefits under their insurance policy.

106.    Plaintiff and Class Members trusted, based on only Defendant's word, that Defendant would uphold their end of the contract and provide direct payment of PIP and/or MedPay benefits to policyholders.

107.    Plaintiff paid all insurance premiums as they were due.

108.    Defendant failed to issue payment of benefits directly to Plaintiff under the applicable PIP and/or MedPay portion of the policy.

109.    By failing to issue payment directly to Plaintiff, providing payment to someone other than Plaintiff, and failing to remedy the error, Defendant has betrayed Plaintiff's trust and breached their fiduciary duty that was owed to Plaintiff.

110.    Defendant's breach has resulted in damage to Plaintiff and members of the Class who have paid insurance premiums for an insurance policy only to have their benefits wrongfully paid to someone else. Plaintiff and Class Members have had to spend additional money out of pocket to correct the mistakes that were made by Defendant. Defendant has retained the money paid by Plaintiff without payment to policyholders and thus have benefited from breach of fiduciary duty.

111.    Plaintiff and members of the proposed Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

## COUNT VII
## DECLARATORY AND INJUNCTIVE RELIEF

112.    Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

113.    Plaintiff brings this count on behalf of herself, her minor children, and other members of the Class.

114.    Under the Declaratory Judgment Act, 28 U.S.C § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that violate the terms of the statues described in this complaint.

115.    An actual controversy has arisen in the wake of Defendant's subrogation practices regarding its present and prospective common law duties as well as other duties to provide required payable PIP and MedPay policy benefits.

116.    Plaintiff alleges that Defendant's current subrogation practices are unlawful, deceptive and in bad faith. Plaintiff and the Class have suffered and will continue to suffer injury as a result of Defendant's practices.

117.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.   Defendant continues to owe a legal duty to provide consumers who pay their premium amounts adequate benefits per their PIP/ MedPay policies.

    b.   Defendant continues to breach this legal duty by not providing required payable PIP and MedPay policy benefits.

118.    The Court should issue a corresponding prospective injunctive relief requiring that Defendant stop the practice of submitting PIP/MedPay benefits to anyone other than the insured and employ transparent practices with consumers with purchase their PIP/ MedPay policies.

119.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy, in the event of Defendant continuing their unlawful practices. The risk of Defendant continuing such deceptive practices is real, immediate, and substantial. If these practices continue, Plaintiff and the Class will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

120.    The hardship to Plaintiff and the Class if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Among other things, if Defendant's practices continue, Plaintiff will likely be subjected to further fraud and financial hardship. On the other hand, the cost to Defendant of complying with an injunction by employing transparent practices is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

121.    Issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by preventing further financial hardships and deceptive practices by Defendant and similar companies.

## COUNT VIII
## PUNITIVE DAMAGES

122.    Plaintiff incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

123.    Plaintiff brings this count on behalf of herself, her minor children, and other members of the Class.

124.    The acts and omissions of Defendant described herein consisted of oppression, fraud and/or malice and were done with advance knowledge, conscious disregard of the rights of others and/or ratification by Defendant's officers, directors and/or managing agents.

125.    Defendant's actions amount to actual malice or reckless indifference to the likelihood of harm associated with their acts and omissions.

126.    Plaintiff is entitled to punitive damages because Defendant mislead, misrepresented and/or withheld information and materials from consumers and the public at large, including Plaintiff, concerning benefits provided under Defendant's PIP and MedPay policies.

127.    Despite that Defendant knew or should have known the true benefits provided under their PIP and MedPay policies, Defendant continued to market their policies by providing false and misleading information with regard to their policies and their subrogation practices.

128.    Defendant failed to provide consumers, including Plaintiff, with available materials, information concerning their subrogation practices, and accurate PIP/ MedPay policy benefit information that would have ultimately dissuaded them from purchasing a policy through Defendant and paying the subsequent premiums. Thus, Defendant has deprived otherwise uninformed consumers from weighing the risks and benefits of purchasing PIP/MedPay policies.

129.    Defendant's conduct was committed with knowing, conscious and deliberate disregard for the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to

punitive damages in an amount appropriate to punish Defendant and deter them from similar conduct in the future.

130.    Consequently, Defendant is liable for punitive damages in an amount to be determined by the jury at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself, her minor children, and the other members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure;

B.   An order naming Plaintiff as the representative for the Class and Plaintiff's attorney as Class counsel;

C.   For an order declaring the Defendant's conduct violates the causes of actions referenced herein;

D.   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

E.   Awarding Plaintiff and the proposed Classes damages;

F.   Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Classes;

G.   Awarding declaratory and injunctive relief as permitted by law or equity, including:

   a.   Enjoining Defendant from continuing the unlawful practices as set forth herein,

   b.   Directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

H.   Ordering Defendant to engage in a corrective advertising campaign;

I.   Awarding punitive damages;

J.     Awarding restitution disgorgement in favor of Plaintiff and all other similarly situated persons in South Carolina;

K.     Awarding the costs and expenses of this litigation to Plaintiff;

L.     Awarding reasonable attorneys' fees and costs to Plaintiff as provided by law;

M.     Awarding pre-judgment and post-judgment interest to Plaintiff; and

N.     For such further relief as this Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.


Dated: August 22, 2024                              Respectfully submitted,

*/s/ Paul J. Doolittle*
Paul J. Doolittle
**POULIN | WILLEY ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: paul.doolittle@poulinwilley.com
          cmad@poulinwilley.com